_____

SO ORDERED,

*[signature]*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 28, 2017**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:   JEANETTE PETERS** | **CASE NO. 15-02199-KMS** |
| **DEBTOR** | **CHAPTER 7** |
| **HOMETOWN CREDIT LLC** | **CREDITOR/PLAINTIFF** |
| **V.** | **ADV. NO. 15-00067-KMS** |
| **JEANETTE PETERS** | **DEBTOR/DEFENDANT** |

### FINAL JUDGMENT AND ORDER AWARDING ATTORNEY'S FEES

This matter is before the Court on the Application in Support of Request for Attorney's Fees (Adv. Dkt. No. 24)[1] filed by Creditor Hometown Credit, LLC. The Court previously found the debt owed by Jeanette Peters to Hometown Credit, LLC to be nondischargeable and allowed Hometown Credit, LLC to submit an attorney fee request. *Hometown Credit, LLC v. Peters (In re Peters)* Bankr. No. 15-02199, Adv. No. 15-00067, 2016 WL 4991506, at *3 (Bankr. S.D. Miss. Sept. 16, 2016). The Court held a hearing on the fee application on November 17, 2016. Adv. Dkt.

_____

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 15-00067-KMS, are cited as "Adv. Dkt. No. ___"; and (2) citations to docket entries in the main bankruptcy case, Case No. 15-02199-KMS, are cited as "Dkt. No. ___".

1

No. 28. Having considered the arguments and evidence in this case, the Court finds that Hometown

Credit, LLC is entitled to attorney's fees and costs in the amount of $5,669.38.

## I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this adversary

proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (I), and (O).

## II. Findings of Fact[2]

After a trial on the matter, the Court entered an opinion finding that the debt owed by

Jeanette Peters to Hometown Credit, LLC ("Hometown Credit") to be nondischargeable under

Section 523(a)(2)(B) of the Bankruptcy Code. *In re Peters*, 2016 WL 4991506, at *3. The Court

further ordered that "Hometown Credit may submit a fee itemization and supporting affidavit as

required by the Court's local rules. . . ." *Id.* Hometown Credit requests $11,988.75, including

$11,388.75 in fees and $600.00 in expenses. Adv. Dkt. No. 24 at 1. The fee itemization attached

to Hometown Credit's application shows that its attorneys billed 58.15[3] hours on this adversary

proceeding. Adv. Dkt. No. 24-1 at 4. Three individuals appear on the itemization, but only the

entries for Stacey Moore Buchanan and John S. Simpson are billed above $0.00 per hour. The rate

billed for services rendered by Buchanan is $200.00 per hour, and the rate billed by Simpson is

$275.00 per hour. *See* Adv. Dkt. No. 24-1 at 3-4. The promissory note between Peters and

Hometown Credit provides the basis for the Court's award of reasonable attorney's fees. It states:

> DEFAULT, ACCELERATION, AND POST MATURITY INTEREST: Upon
> default by Borrower (1) Lender may (i) bring suit for the delinquent payments

---

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[3] The fee itemization provides that the total hours billed is 44.60. Adv. Dkt. No. 24-1 at 4. This calculation is in error, as acknowledged by Hometown Credit at the hearing. Adv. Dkt. No. 33 at 3. When the Court undertook to sum up the individual entries on the itemization after consideration of the testimony at the hearing, the total was 58.15. The Court did not include hours that were zero billed.

> without accelerating the remaining balance and/or (ii) with or without notice to Borrower, declare the remaining balance immediately due and payable, less any rebate of unearned Finance Charges as provided for above, and (2) Borrower shall pay all of Lender's attorney's fees and Lender's legal expenses, whether or not there is a lawsuit, including attorney's fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction, and actions to object to discharge and/or dischargeability), and appeals.

Adv. Dkt. No. 1-2 at 2. According to the undisputed testimony at trial, Peters was in default at the time she filed for bankruptcy.

The Court held a hearing on the fee application on November 17, 2016. Adv. Dkt. No. 28. Simpson appeared as counsel for Hometown Credit and called to testify (1) Buchanan, (2) Stephen Binning, the owner of Hometown Credit, and (3) Jeffrey Ryan Barber,[4] "an expert witness in the area of debtor and creditor rights, specifically non-dischargeability actions and attorneys' fees associated with non-dischargeability actions." Adv. Dkt. No. 33 at 30.

### III. Conclusions of Law

Although "the Bankruptcy Code does not expressly award attorney's fees to a creditor who successfully contests the dischargeability of his claim[,] . . . creditors are entitled to recover attorney's fees in bankruptcy claims if they have a contractual right to them valid under state law." *Jordan v. Se. Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226-27 (5th Cir. 1991) (internal quotation marks omitted), *overruled on other grounds by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 260-61 (5th Cir. 1993). Where an award of attorney's fees is based on substantive state law, then state law governs the reasonableness of that award. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."). Because Hometown Credit's entitlement to fees is

---

[4] Barber was admitted to testify as an expert after questioning by Peters' counsel. Adv. Dkt. No. 33 at 31. Upon questioning by the Court, Barber conceded, however, that he only recalled representing creditors in Chapter 13 non-dischargeability actions twice in the last ten years. Adv. Dkt. No. 33 at 44.

based on a contract governed by Mississippi law, the Court will apply Mississippi law to determine

whether the requested fees are reasonable. In most cases in Mississippi, whether state or federal

law applies is a distinction without a difference because the lodestar method and *Johnson*[5] factors

applied by federal courts are "almost identical" to those applied by the Mississippi Supreme Court

and codified in Rule 1.5 of the Mississippi Rules of Professional Conduct. *See Mauck v. Columbus*

*Hotel Co.*, 741 So. 2d 259, 272 (Miss. 1999); *Ill. Cent. R.R. Co. v. Harried*, No. 5:06cv160, 2011

WL 283925, at *7 (S.D. Miss. Jan. 25, 2011) (holding that "though Mississippi law governs the

amount of the fee award here, because the factors considered under state and federal law are nearly

identical, both state and federal cases are instructive").

> The Mississippi Code provides that
>
> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.[6]

Miss. Code Ann. § 9-1-41 (1990).[7] The "proper procedure" for determining a reasonable award of

attorney's fees in Mississippi is to determine a "reasonable fee, based on the number of hours

---

[5] *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) *abrogated in part by Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (holding that contingency fee contract did not cap award of attorney's fees where *Johnson* had so held).

[6] *But see Speights v. Speights*, 126 So. 3d 76, 82 (Miss. Ct. App. 2013) ("[W]here there are many billable hours that the court is unable to observe or lacks knowledge of, it is incumbent upon the party requesting fees to place before the court evidence as to the reasonableness of the amount of the award, so that the record as a whole can support the award of attorney's fees."). The Court's local rules require attorneys requesting fees to submit itemizations and supporting affidavits with any fee request. *See* Miss. Bankr. L.R. 7054-1(b)(2)(A)-(B). It is a rare case where this Court will not require that the local rule be followed because few hours that attorneys bill in nondischargeability actions are spent in front of the Court.

[7] This statute applies to cases where the basis for an award of attorney's fees is contractual, not just where the fee award is statutory. *See, e.g., Philips Med. Capital, LLC v. P & L Contracting, Inc.*, No. 2:10cv092, 2012 WL 860324, at *4 (N.D. Miss. Mar. 13, 2012).

reasonably expended on the litigation, multiplied by a reasonable hourly rate" then "consider[] the eight factors enumerated in [Mississippi] Rule[8] 1.5. . . ." *In re Estate of Gillies*, 830 So. 2d 640, 646 (Miss. 2002). Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Miss. R. Prof'l Conduct 1.5(a). A trial court must support any award with "findings of fact and conclusions of law," though individual consideration of each factor has never been specifically required. *See BellSouth Pers. Commc'n, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So. 2d 436, 446 (Miss. 2005) (quoting *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 487 (Miss. 2002)). Consideration of the factors need not be taken in a particular order.

Hometown Credit argues that the fees it seeks are reasonable. Peters argues that they are excessive. Peters brings two challenges to the requested amount: (1) that the hours billed are excessive light of the amount involved and (2) that counsel for Hometown Credit "overlawyered" this case resulting in redundant fees. Adv. Dkt. No. 27 at 2-3. The first argument addresses one of the factors for reasonableness, and the second addresses the calculation of the lodestar amount. The Court recently and thoroughly examined an award of attorney's fees under a contract to a prevailing creditor and adopts many of the same conclusions of law here, finding the legal

---

[8] For convenience, references to the Mississippi Rules of Professional Conduct are shortened to "Mississippi Rule ____".

questions presented to be substantially similar. *See Pikco Fin., Inc. v. Staten (In re Staten)*, 559

B.R. 666, 671-75 (Bankr. S.D. Miss 2016).

A. The Reasonable Fee / Lodestar

Counsel for Hometown Credit has included 58.15 billed hours in the fee itemization. Some

of the entries are billed at $0.00 per hour, and counsel voluntarily reduced the bill by $800.00.

According to the affidavit and the testimony at the hearing, Buchanan was the primary attorney on

this case, and Simpson's billed hours represent time spent on this case while Buchanan was on

maternity leave. Adv. Dkt. No. 24-1 at 1; Adv. Dkt. No. 33 at 4-5. Because of this, the Court will

attribute the voluntary reduction in fees solely to Buchanan's hours. After review of the

itemization, the Court finds that Buchanan is seeking payment for 47.9[9] hours and that Simpson is

seeking repayment for 6.25 hours. The Court further finds that Buchanan's rate of $200.00 and

Simpson's rate of $275.00 are reasonable.[10]

The Court finds that Buchanan engaged in block billing for the time spent preparing the

subpoenas and the time spent preparing for trial. Block billing "is a billing method in which an

attorney lumps together time spent working on a case, rather than enumerating the time expended

on specific tasks." *In re Adams*, 516 B.R. 361, 372 (Bankr. S.D. Miss. 2014) This "impedes a

court's ability to determine the reasonableness of the hours spent on individual tasks and has served

as the basis for courts to issue a flat reduction of a specific percentage from an award of attorney's

---

[9] The Court reached this number through its own calculation of the itemized fee application. The Court converted the voluntary reduction amount into hours billed at Buchanan's rate and subtracted that from the enumerated entries from the itemization. And instead of using the $450.00 billed with no time expenditure for drafting the complaint, the Court used the 1.8 hours Buchanan testified that she spent drafting the complaint and added it to the itemization. *See* Adv. Dkt. No. 33 at 6 ("In October, what's not listed on that itemized time sheet is the on [sic] October 20th where it says preparation and filing by Ms. Buchanan of complaint, the time that I actually spent on that was 1.8 hours.").

[10] "The 'reasonable hourly rate' for the lodestar calculation is 'calculated according to the prevailing market rates in the relevant community' and must be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Idom v. Natchez-Adams Sch. Dist.*, No. 5:14cv38, 2016 WL 320954, at *3 (S.D. Miss. Jan. 25, 2016) (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)).

fees." *Id.* at 373. First, the itemization contains an entry for 5.1 hours billed to prepare nine[11]

subpoenas and serve five of them through process servers.[12] Adv. Dkt. No. 24-1 at 3. Buchanan

testified that this time included drafting the subpoenas, finding where the companies could be

served, and giving them to the process server. Adv. Dkt. No. 33 at 7. Peters argues that these

subpoenas are "likely [to be] quite similar in form to subpoenas used in similar cases," and the

Court agrees. *See* Adv. Dkt. No. 27 at 3. Despite Buchanan's testimony that these companies often

have incorrect information on the Mississippi Secretary of State's website, it is the Court's

experience that finance companies owned by Binning and represented by Buchanan and Simpson

have served process on these same entities in other cases.[13] Second, the itemization also contains

---

[11] This total number of subpoenas is not stated in the itemization, but Buchanan testified at the hearing to having served nine subpoenas, *see* Adv. Dkt. No. 33 at 7, and nine subpoenas were docketed in the main case, Dkt. Nos. 32, 33, 34, 35, 36, 37, 38, 39, 40. The four subpoenas not served through a process server were served via email. Adv. Dkt. No. 33 at 7 ("[F]our of those initial ones were e-mailed by me. That's why on the itemization you only see five charges for service of process of the subpoenas.").

[12] In this case, Hometown Credit served subpoenas on Speedee Cash of Mississippi, Inc.; All American Check Cashing, Inc.; Advance America Cash Advance; Express Check Advance; Mississippi Title Loans, Inc.; Tower Loan of Mississippi, Inc.; Cash, Inc.; Quick Cash Financial Services, Inc.; and Tillman Furniture Company, Inc. Dkt. Nos. 32, 33, 34, 35, 36, 37, 38, 39, 40. The subpoenas for Speedee Cash of Mississippi, Inc.; All American Check Cashing, Inc.; Tower Loan of Mississippi, Inc.; and Quick Cash Financial Services, Inc. were all served by email, and the remaining subpoenas were served via a process server.

[13] In a 2014 adversary proceeding before this Court, Buchanan served a subpoena on Speedee Cash of Mississippi, Inc. *Pikco Fin., Inc. v. Ashley (in re Ashley)*, Bankr. No. 14-00676, Adv. No. 14-00039 (Bankr. S.D. Miss. notice entered Oct. 27, 2014). The subpoena in that case was served via process server. In another 2014 adversary proceeding before this Court, Buchanan served similar subpoenas on Express Check Advance, LLC; Quick Cash Fin. Svs, Inc.; and Speedee Cash of Mississippi, Inc. *Country Credit, LLC v. Whittington (In re Whittington)*, Bankr. No. 13-03230, Adv. No. 14-00008 (Bankr. S.D. Miss. notices entered Oct. 29, 2014). In that case, Buchanan served the subpoenas on Quick Cash Financial Services, Inc. and Express Check Advance, LLC via process server but served Speedee Cash of Mississippi, LLC via email. The Court notes that Buchanan also served Express Check Advance, LLC via process server and Speedee Cash of Mississippi, LLC via email in this case. In a third case in 2014 before this Court, Buchanan, on behalf of Pikco Finance, Inc., served subpoenas on Advance America and Speedee Cash of Mississippi, Inc. *In re Tillmon-Davis*, Bankr. No. 14-02276 (Bankr. S.D. Miss. notices entered Dec. 5, 2014). The subpoenas in that case were served on the same people and in the same manner as they were in this case. Lastly, in a 2015 adversary proceeding before this Court, Buchanan served subpoenas on Express Check Advance of Mississippi, LLC and All American Check Cashing, Inc. *Country Credit, LLC v. Smith (In re Smith)*, Bankr. No. 14-02783, Adv. No. 15-00025 (Bankr. S.D. Miss. notices entered July 1, 2015). In that case, Buchanan served both companies via process server. The Court notes that Buchanan served Express Check Advance of Mississippi, LLC via process server in this case but served All American Check Cashing via email. These cases are not an exhaustive inquiry into Buchanan's history serving subpoenas on payday lenders in Mississippi bankruptcy cases, but the Court finds that they are illustrative of its point that Buchanan has more than a passing familiarity with the agent for receipt of process for many of these entities.

two entries for trial preparation billed at 1.6 hours and 4.9 hours. Adv. Dkt. No. 24-1 at 4. While the Court appreciates counsel's thorough preparation, it is impossible to know whether these preparations are reasonable if the Court does not know what Buchanan did to prepare. Buchanan did not testify as to what she did to prepare for trial. The Court finds 11.6 total block billed hours. Because "the Court is unable to determine fully the reasonableness of those billing entries . . ., the Court will decrease [Hometown Credit's] fees for these specific entries by fifty percent (50%)" or 5.8 hours. *Adams*, 516 B.R. at 373.

Therefore, the lodestar amount for Buchanan is $8,420.00 (42.1 times $200.00), and the lodestar amount for Simpson is $1,718.75 (6.25 times $275.00). The Court now turns to the Mississippi Rule 1.5 factors to determine whether these amounts should be reduced or increased.

B. The Mississippi Rule 1.5 Factors

Just as it has before, "[t]he Court finds that the fourth, third, and first factors, when considered together, merit a substantial reduction in the amount of the award. . . ." *In re Staten*, 559 B.R. at 671. Barber, Hometown Credit's expert, discussed these three factors in his testimony. Adv. Dkt. No. 33 at 33-39. The Court finds that the remaining factors do not merit a change in the lodestar amount and does not address them here.

*Fourth Factor: The Amount Involved and the Results Obtained*

Hometown Credit did not file a proof of claim in this case but stated in its adversary complaint that it was owed a debt of $2,903.89 as of the time of filing. Adv. Dkt. No. 1 at 1. After a trial, the Court found the entire debt to be nondischargeable. *In re Peters*, 2016 WL 4991506, at *3. As the Court has previously held:

> Successful representation in and of itself does not justify an increase in the base fee because "the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as [an] independent bas[i]s for increasing the basic fee award." *Mauck*, 741 So. 2d at 272 (quoting *Pennsylvania*

8

> *v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). Further, the underlying claim amount involved in this litigation is relatively small. Other courts applying this identical factor from *Johnson* have held that an attorney's fee "almost double" the amount in dispute was excessive. *Driftwood Manor Owners Ass'n v. Borgus (In re Borgus)*, 544 B.R. 315, 325 (Bankr. E.D.N.C. 2016) ("The court cannot find any basis upon which to justify a fee award that is so much larger than the underlying debt."); *see also Meeks v. State Farm Mut. Auto. Ins. Co.*, 460 F.2d 776, 780 (5th Cir. 1972) ("The amount of the district court's award is nearly eighty per cent of the amount of [the] recovery. Without minimizing the complexity of the issues, both of law and fact, we think it might well be said that, measured by the amount involved, the fee allowed is more than the traffic should bear."); *Adams v. Hernandez (In re Hernandez)*, Bankr. No. 13–12479, 2014 WL 2609795, at \*7 (Bankr. D. Colo. June 11, 2014) (finding that billing "nearly 20 hours to demonstrate damages of $3,500.00 ... result[ed] in a fee that is high in relation to the amount reasonably at issue under a nondischargeability theory and the results obtained"). Additionally, compelling Mississippi case law suggests that the award of attorney's fees should rarely exceed the amount of the recovery, regardless of the work actually performed. *See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 915 (Miss. 1993) (fee for recovery under open account statute and for defense of counterclaim which was greater than jury award "appeared to be excessive").

*In re Staten*, 559 B.R. at 671-72 (footnote omitted) (alteration in original).

The amount of the underlying debt is $2,903.89 and the lodestar amount as determined by the Court is $8,420.00 for Buchanan and $1,718.75 for Simpson. The total request is $10,138.75 or more than triple the amount of the debt. The Court finds no basis to justify a fee award so much greater than the amount recovered. The Court previously reduced a fee award by 75%, finding that the request was "nearly quadruple" the amount of the underlying debt. *Id.* at 672. However as noted below in discussion of the first factor, there are differences between *Staten* and this case, and as a result, the Court finds that this factor merits a 50% reduction in the fees for both Buchanan and Simpson, when the third and first factors are also considered. The lodestar amount is reduced to $4,210.00 for Buchanan and $859.38 for Simpson.

Barber asserted in his testimony discussing this factor that

> [he had] represented a number of creditors in different industries who have basically felt that they needed to be able to make a certain statement that they're

9

not going to allow themselves to be taken advantage of and sometimes that does mean that they have to file actions and take some fairly aggressive positions in order to protect themselves. But if they're not able to -- if they win and they're not able to recoup those attorneys' fees, at some point you can only bear so many Pyrrhic victories and so if they're not able to recoup those attorneys' fees and expenses, it's going to have a potentially chilling effect on those particular creditors with a result that debtors who have violated [the Bankruptcy Code] and have done actions that the code says should be non-dischargeable end up getting discharged.

Adv. Dkt. No. 33 at 35-36. The Court finds this argument irrelevant to the discussion of this factor in general and unpersuasive when considering the factors and the purpose of bankruptcy as a whole, particularly in the context of small consumer loans.

*Third Factor: The Fee Customarily Charged in the Locality for Similar Legal Services*

Barber testified that the rates charged by Buchanan and Simpson were reasonable, even calling Buchanan's rate "a bargain." Adv. Dkt. No. 33 at 35. He further testified that it would be unreasonable to find that "another firm [could] . . . have prosecuted this case through trial for any amount significantly less than $12,000." Adv. Dkt. No. 33 at 34-35. Barber based his testimony, at least in part, on the "very thorough and comprehensive scheduling order" required in this Court. Adv. Dkt. No. 33 at 35. The Court notes that its scheduling order is a streamlined version of the once used by the District Court. It requires initial disclosures in an attempt to avoid unnecessary and duplicative discovery.

Regarding this factor, the Court previously held that it "has been the experience of the Court" "that the customary fee for" "suits for nondischargeability for small consumer loans" "is one-third of the amount of the indebtedness." *In re Staten*, 559 B.R. at 672-73 (listing cases). Considering Barber's testimony and the Court's own experience, the Court finds again that "[t]his factor also supports a reduction in the amount of the fee. However, in light of the reduction made above, no further reduction will be taken." *Id.* at 673.

*First Factor: The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly*

Barber testified that "[a]dmittedly, the issues [in this case] were not particularly unusual or novel" but that Hometown Credit "had to do a little more legwork in this particular case in order to satisfy the standard pleading requirements in Federal Court and to make sure that the complaint was substantially justified."[14] Adv. Dkt. No. 33 at 34. The Court agrees that the questions presented were not novel or difficult. And as before, "[t]he Court further finds that 'nothing in the record indicates that the nature of the litigation involved in this adversary proceeding varies drastically from the average bankruptcy-related representation undertaken by' Buchanan." *In re Staten*, 559 B.R. at 673 (quoting *Schermerhorn v. CenturyTel, Inc. (In re Skyport Global Commc'ns, Inc.)*, 450 B.R. 637, 654 (Bankr. S.D. Tex. 2011)).

There are, however, important differences between this case and *In re Staten* that are relevant to the discussion of this factor. In *Staten*, the Court found that the discovery conducted by the creditor was not proportional to the needs of the case because the creditor had continued to propound discovery when settlement negotiations broke down, and the only issue remaining to be settled was the amount of the creditor's attorneys' fees. *Id.* at 673-74. The Court held that the parties should have "submitted the question of attorney's fees to the Court rather than needlessly drive up the fees by continuing to litigate." *Id.* at 674 (holding that "[a] contractual provision to

---

[14] Barber also testified in discussion of this factor that Buchanan's and Simpson's "skill as practitioners enabled [them] to handle this case more efficiently, even to the point of being able to narrow the number of process servers that were needed to serve subpoenas which, of course, was a cost savings." Adv. Dkt. No. 33 at 34. The Court finds that this testimony relates more to a discussion of the seventh Mississippi Rule 1.5 factor: the experience, reputation, and ability of the lawyer or lawyers performing the services. *See* Miss. R. Prof'l Conduct 1.5(a)(7). The Court previously found that "the Fifth Circuit has held, this factor is generally already reflected in the lodestar amount and will only merit an increase in the 'rare and exceptional' case." *In re Staten*, 559 B.R. at 675 (quoting *TransAmerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480, 488 (5th Cir. 1994)). As before, the Court finds that "[t]his case is neither rare nor exceptional." *Id.*

pay attorney's fees is not a blank check" and that "[i]f proper restraint is not exercised, the costs of any 'overlawyering' should be borne by the Creditor, rather than Debtors").

In this case, Buchanan testified that she contacted Peters's counsel with a settlement offer for "the amount of the debt, $2,093.23, plus the $350 court filing fee and then the attorneys' fees to be decided by" the Court. Adv. Dkt. No. 33 at 10. Peters rejected that offer, and consequently, the case was submitted to trial, *where Peters did not even appear to testify*. *See* Adv. Dkt. No. 33 at 12. Just as the Court would not allow creditor's counsel to profit from engaging in unnecessary litigation, the debtor cannot avoid paying for fees that she has caused the creditor to reasonably incur. *See Schwertner Backhoe Servs., Inc. v. Kirk (In re Kirk)*, 525 B.R. 325, 337 (Bankr. W.D. Tex. 2015).[15]

C. Expenses Requested

Having fully examined the fee itemization, the Court turns to the expenses requested. Hometown Credit requested $600.00 in expenses, which are included as a separate category in the fee itemization. Adv. Dkt. No. 24-1 at 4. Peters did not challenge the claimed expenses in her objection, and the Court finds the expenses listed are reasonable. Accordingly, the Court finds that Hometown Credit is entitled to the full amount of expenses requested.

IV. Conclusion

Having considered the Mississippi Rule 1.5 factors and the lodestar amount, the Court finds that Hometown Credit is entitled to collect $4,210.00 in attorney's fees for Buchanan and $859.38

---

[15] In *Kirk*, "the parties filed numerous joint motions seeking additional time to conduct and conclude discovery." *In re Kirk*, 525 B.R. at 329. Further, "over a year after serving the first deposition notice, and after serving seven additional notices, [the creditor] was able to take [the debtor]'s deposition. This long-delayed deposition proved crucial, as [the debtor] conceded liability on the . . . debt." *Id.* The Court found that creditor's counsel "was necessarily required to spend time drafting and negotiating agreements with opposing counsel to accomplish these continuances" and that the debtor "could have saved both sides considerable expense and time by conceding to liability and nondischargeability at the outset, rather than waiting until the eve of trial." *Id.* at 337. Therefore, the Court also found that the fees requested by the creditor were reasonable. *Id.*

for Simpson and $600.00 in expenses for a total award of $5,669.38. This amount shall be added

to the debt Peters owes Hometown Credit, which the Court found to be nondischargeable in the

amount of $2,903.89. *See In re Jordan*, 927 F.2d at 226–28 (holding that where party has

contracted to pay attorney's fees for collection of nondischargeable debt, attorney's fee award also

will not be discharged in bankruptcy). Accordingly, the total nondischargeable debt Peters owes

Hometown Credit is $8,573.27.

**IT IS HEREBY ORDERED AND ADJUDGED** that the relief sought in the Complaint

(Adv. Dkt. No. 1) is GRANTED and the debt Jeanette Peters owes Hometown Credit, LLC is

nondischargeable in the amount of $2,903.89.

**FURTHER ORDERED AND ADJUDGED** that Hometown Credit, LLC's request for

attorney's fees and costs is GRANTED IN PART in the amount of $5,669.38 for a total

nondischargeable judgment in the amount of $8,573.27, together with interest thereon from the

date of the entry of this Final Judgment at the rate provided in 28 U.S.C. § 1961.

## *END OF ORDER* ##

13